Sara J. Van Dyke, pro se
20 East 35th Street, Apt. 14L
New York, NY 10016
(212) 725-2706 *Phone and fax*
sjvdnyc@hotmail.com *Email*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 2-4-2013

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARA J. VAN DYKE,<br><br>Plaintiff,<br><br>      -against-<br><br>Partners of DEBEVOISE & PLIMPTON LLP, BREAKING MEDIA, INC., PAUL GALLIGAN, and DOES 1 - 6,<br><br>Defendants | Magistrate Judge Ellis<br><br>Civil Action No. 12 CV 8354<br><br>**AFFIRMATION IN OPPOSITION TO DEFENDANT BREAKING MEDIA, INC.'S MOTION TO DISMISS** |

I, Sara J. Van Dyke, affirm under penalty of perjury that:

I, Sara J. Van Dyke ("Plaintiff"), am the plaintiff pro se in the above entitled action, and respectfully submit this affirmation in opposition to the motion dated January 14, 2013 made by attorneys for defendant Breaking Media, Inc. ("Breaking Media") asking that the Court dismiss Plaintiff's Complaint dated November 15, 2012, in lieu of answer, due to a lack of federal jurisdiction; because the claims are inadequately plead and dismissible; and to the extent based on third-party comments on the Above the Law blog, because the claims in the Complaint are barred by §230 of the Communications Decency Act of 1996, 47 U.S.C. § 230 et. seq. ("CDA").

1

I have personal knowledge of facts which bear on this motion.

The motion should be denied because (i) federal jurisdiction is proper pursuant to the federal question and supplemental jurisdiction; (ii) the Complaint properly alleges timely and fully plausible claims against Breaking Media for intentional infliction of emotional distress under New York state law; and (iii) the CDA does not apply to actions alleged against Breaking Media.

## TABLE OF CONTENTS

**Page**

I.    Federal Jurisdiction is Proper Pursuant to Supplemental Jurisdiction    6

II.   The Complaint Properly Alleges a Timely and Plausible Cause of Action
      For Intentional Infliction of Emotional Distress    7

      A.    Claim Is Not Time-Barred    7

      B.    Allegations Are Fully Plausible    8

      C.    New York Case Law Supports Plaintiff, Not Breaking Media    10

      D.    Intentional Infliction of Emotional Distress Is Properly Pleaded    14

III.  The Communications Decency Act Does Not Apply to Plaintiff's Allegations    20

**TABLE OF AUTHORITIES**

**Cases**                                                                    **Page**

Ain v. Glazer, 257 A.D.2d 422 (1st Dept. 1999)                                   8

Anthony v. Yahoo! Inc., 421 F.Supp.2d 1257 (N.D. California, 2006)              22

Brown v. Sears Roebuck & Co., 297 A.D.2d 205 (1st Dept. 2002)                   12

Carafano v. Metrosplash.com, Inc., 339 F.3d 1119 (9th Cir. 2003)               22

Drury v. Tucker, 210 A.D.2d 891 (4th Dept. 1994)                                 8

Gallagher v. Directors Guild of America, 144 A.D.2d 261 (1988)                   8

Galvin v. Francis, 2003 WL 21696740 (N.Y. Sup. 2003)                             8

Gibson v. Craigslist, Inc., 2009 WL 1704355 (S.D.N.Y. June 15, 2009)           22

Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987)                              7

Murawski v. Pataki, 514 F.Supp.2d 577 (S.D.N.Y. 2007)                           22

Piggot v. City of New York, 32 Misc.3d 1208(A), (N.Y. Sup. Kings Co. 2011)    11, 12, 13

Shannon v. MTA Metro North R.R., 269 A.D.2d 218 (1st Dept. 2000)              8, 13

Vasarhelyi v. New School for Social Research, 230 A.D.2d 658 (1996)            13

Warner v. Druckier, 266 A.D.2d 2 (1st Dept. 1999)                              13


**Statutes**

28 U.S.C. §1331                                                                 6

28 U.S.C. §1332                                                                 6

28 U.S.C. §1367(a)                                                              6

42 U.S.C. §§ 2000e to 2000e-17     6

47 U.S.C. §230, et seq.     1, 20, 21, 22

N.Y. C.P.L.R. §215     8

N.Y. Civ. Rights Law §50     17

I.    Federal Jurisdiction is Proper Pursuant to Supplemental Jurisdiction

Defendant Breaking Media's motion to dismiss states that there is no federal question

jurisdiction by the Court over Plaintiff's claims against Breaking Media, there is no diversity

jurisdiction between them, and accordingly Plaintiff's claims against Breaking Media must be

dismissed with prejudice for lack of subject matter jurisdiction.   In fact, the Complaint properly

alleges employment discrimination in the form of retaliation in violation of Title VII of the Civil

Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17, against defendant Debevoise &

Plimpton LLP ("Debevoise"), a federal question for which the Court has original jurisdiction

under 28 U.S.C. §1331 (see Comp. §14).   The alleged retaliation involves harassing material on

the legal blog Above the Law, published by Breaking Media, and collusion with the editors of

Above the Law.   Because the claims against Breaking Media are closely related, the Court has

supplemental jurisdiction over defendant Breaking Media and the state common law claims for

intentional infliction of emotional distress pursuant to 28 USC § 1367(a).   This statute provides

that, except in cases involving diversity jurisdiction under 28 U.S.C. §1332 (which is not

relevant), or where the court may decline to exercise supplemental jurisdiction in certain

circumstances:

"... in any civil action of which the district courts have original jurisdiction, the district

courts shall have supplemental jurisdiction over all other claims that are so related to

claims in the action within such original jurisdiction that they form part of the same case

or controversy under Article III of the United States Constitution. Such supplemental

jurisdiction shall include claims that involve the joinder or intervention of additional

parties."

Breaking Media's motion to dismiss cites <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63 (1987), "Federal question jurisdiction exists 'only when a plaintiff's well-pleaded complaint raises issues of federal law.'"  In fact, Plaintiff's Complaint is a well-pleaded complaint expressly raising issues of federal law, states that the Court can assert "pendent" jurisdiction (see Comp. §14),[1] and has been filed in federal court.  Accordingly, <u>Metro Life</u> does not support Breaking Media's claim of no subject matter jurisdiction.

## II. The Complaint Properly Alleges a Timely and Plausible Cause of Action For Intentional Infliction of Emotional Distress

### A.   Claim is Not Time-Barred

Like defendant Debevoise, Breaking Media has stated that Plaintiff's cause of action is time-barred.  Like Debevoise in its motion to dismiss, Breaking Media has ignored timely allegations clearly set forth in the Complaint.   The Apartment Murder comment by defendant Doe 6 was posted on an Above the Law thread dated November 16, 2011 (Comp. §§ 20, 34 and 35), not May 16, 2011 as Breaking Media has claimed.  Contrary to what the motion to dismiss indicates, the Apartment Murder comment is fully within the one-year applicable time period for intentional infliction of emotional distress.  Additionally, Breaking Media's motion to dismiss ignores timely allegations set forth in §36 of the Complaint that, as Plaintiff was preparing her EEOC Charge of Discrimination around April and May 2012, Above the Law editors noticed a number of page hits on the relevant threads coming from Plaintiff's home computer; tipped off Debevoise and others, who correctly gleaned that Plaintiff was preparing to take legal action and who made intimidating comments directed at Plaintiff on Above the Law; and published a

---

[1]       "Pendent" jurisdiction was intended to refer to state law claims against all parties.  Plaintiff will amend the Complaint to refer to supplemental jurisdiction under 28 USC § 1367(a) if so directed by the Court.

creepy and intrusive thread similar to the Blazing Saddles post to taunt and bait Plaintiff based on her research activity, and to stimulate controversy.  See Section II.D(8) and (9) below.

In fact, even acts of harassment of Plaintiff outside the one-year statute of limitations for intentional infliction of emotional distress *(see* C.P.L.R. §215; Gallagher v. Directors Guild of America, 144 A.D.2d 261 (1988)) are timely under the continuing tort doctrine, followed by the First Department (see Shannon v. MTA Metro North R.R., 269 A.D.2d 218 (1st Dept. 2000).  The continuing tort doctrine is applicable because Plaintiff has set forth concrete factual allegations of a continuing course of conduct of targeted harassment on Above the Law that terminated within one year of Plaintiff's commencing this action on November 15, 2012.  See also Galvin v. Francis, 2003 WL 21696740 (N.Y.Sup.), 2003; Ain v. Glazer, 257 A.D.2d 422 (1st Dept. 1999); and Drury v. Tucker, 210 A.D.2d 891 (4th Dept. 1994).

### B.    Allegations are Fully Plausible

Like defendant Debevoise, Breaking Media indicates that Plaintiff's allegations are "wholly implausible" but provides no support for this conclusory statement.  As also indicated in Plaintiff's Affirmation in Opposition to Defendant Debevoise's Motion to Dismiss (see Section II.C thereof, pg. 13)[2] after the Apartment Murder comment on November 16, 2011, a serious event affecting Plaintiff's co-op occurred that illustrated the wrong-headedness of the Apartment Murder comment and other harassing comments directed at Plaintiff on Above the Law in the summer and fall of 2011.  After this serious event, following a period in early 2012

---

[2]     Plaintiff intends that facts alleged in this Affirmation, and in the affirmations Plaintiff has filed on January 10, 2013 and January 18, 2013 in opposition to the motions to dismiss of defendants Paul Galligan and Debevoise, respectively, be considered jointly as to the "plausibility" of Plaintiff's allegations in the Complaint.  It would be an odd result if allegations in the Complaint linking the defendants were found to be "plausible" for purposes of one motion to dismiss, but "implausible" on a motion by another defendant.

when Above the Law editors and commenters tried to exploit the controversy (see Section II.D(8) below), Above the Law cleaned up.  The difference, which was relatively abrupt in the first few months of 2012, was like night and day.  The blog is no longer the misogynist gutter it had become by the fall of 2011 (at least for now).  "Bonobo Bro" (defendant Doe 6), who had in effect taken over Above the Law, no longer posts with any frequency.  Subsequent remedial measures are an appropriate rebuttal to Breaking Media's conclusory statement that Plaintiff's allegations of involvement by Above the Law editors or others affiliated with Breaking Media in harassment of Plaintiff on the legal blog Above the Law are "implausible."

Other subsequent actions are the number of comments on Above the Law directed at Plaintiff and her legal action against Debevoise that have been deleted after the fact.  A recent example of the deletion of a relevant Above the Law comment appeared on a thread dated November 30, 2012, about Debevoise paying year-end bonuses, for them a relatively early announcement.  Of the few comments that were made, Plaintiff recalls seeing a comment along the lines of "the money's good, it's a great place to work, but a lot of drama."  The comment sounded like it was written by a Debevoise employee in response to communications at Debevoise about Plaintiff's suit against Debevoise,[3] and would be relevant to Plaintiff's allegations in the Complaint that Debevoise employees leaked sensitive information about Plaintiff to Above the Law.  Since there was nothing objectionable about the comment on its face – e.g., no personal references or foul language, the comment's deletion confirms Plaintiff's belief that the comment was, in fact, about Plaintiff's lawsuit.  Who deleted this comment and others that are relevant to Plaintiff's claims, and why, will be an issue for discovery and trial.  It

---

[3]      The Court's Initial Pretrial Conference order is dated November 28, 2012.  Debevoise presumably found out about Plaintiff's suit then.

is a reasonable inference that both Debevoise and Above the Law editors were involved, which would confirm Plaintiff's allegation in the Complaint that these parties collude (Comp. §30).

The fact is that Plaintiff's allegations in the Complaint are entirely plausible and consistent with how Above the Law has operated since Plaintiff began reading it in 2006.  Two ongoing characteristics of the blog that are well-known and have been remarked about are:  (i) the "outside/inside" nature of commentary – ostensibly about one thing to the general reader such as law students, but to those "in the know" at big New York law firms, for example, unmistakably referring to "inside" jokes or gossip, and (ii) "trolling" threads and comments aimed at stimulating controversy to generate outraged comments, page hits, and, for Breaking Media, additional advertising revenue.  The Complaint's allegations along these lines are entirely consistent with Above the Law's well-known business practices.

C.     New York Case Law Supports Plaintiff, Not Breaking Media

Breaking Media's motion to dismiss states that none of the relevant Above the Law comments or posts referenced in the Complaint reach the "threshold of outrageousness" that is needed for an intentional infliction of emotional distress claim to survive.  The motion cites two cases where New York courts have dismissed such a claim, and characterizes these cases as involving even more egregious comments or surrounding circumstances than what is described in the Complaint.  In fact, both cases cited by Breaking Media involve alleged activity that is much less egregious and outrageous than what Plaintiff has alleged against Breaking Media and the other defendants.  Other New York cases directly on point, which Breaking Media has ignored, fully support Plaintiff's causes of action for emotional distress.

In <u>Piggot v. City of New York</u>, 32 Misc. 3d 1208(A), (N.Y. Sup. Kings Co. 2011), the plaintiff was the estate of a police officer who caused the death of an unarmed emotionally disturbed man by ordering a taser to be used on the man, who was standing on a balcony. The unarmed man fell off the balcony, struck his head and died as a result of being tasered. In a tragic turn of events, the plaintiff committed suicide. <u>Id</u>. at 2. The alleged "outrageous" conduct by the New York City police department consisted of: (i) demoting the plaintiff to a desk job and having him surrender his gun and badge after an investigation; (ii) statements to the press in this high-profile case, regarding the plaintiff making a mistake and ordering the use of a taser contrary to departmental regulations; and (iii) statements to the plaintiff that he would never work in the emergency unit again, might be civilly and criminally liable and could go to prison. <u>Id</u>. at 2. The court pointed out that, as an initial matter, it is well settled that public policy bars such claims against city defendants. <u>Id</u>. at 4. The police department was within its authority in disciplining the plaintiff. <u>Id</u>. at 5. Additionally, the plaintiff's arguments that the statements to the press about the plaintiff's fault were false and unjustified were not supported by allegations of ultimate facts. <u>Id</u>. at 4. Finally, the court found that the record was devoid of anything in the plaintiff's history that would have put defendants on notice that he might take his own life. <u>Id</u>. at 6. While the events ended tragically, it is not at all surprising that the police communicated with the press about what happened and the fault of the plaintiff; "police brutality" cases inevitably (and tragically for the plaintiff) receive a huge amount of publicity. While the comments allegedly made to the plaintiff by his superiors may arguably have been "mean-spirited" and caused him emotional harm, the unfortunate fact is that his actions leading to the death of an unarmed man had the potential to enflame the public and

thus endanger the safety of all other police officers making arrests, dealing with violence, or working in the community.  The public policy bar to an emotional distress cause of action against the city would seem to take this into account.

In a case that is even less "outrageous," in Brown v. Sears Roebuck & Co., 297 A.D.2d 205 (1st Dept. 2002), the defendant, a retail store, investigated employees for stealing and turned over evidence to the police.  One such employee was arrested, charged and pleaded guilty to multiple counts of larceny, possession of stolen property, and unlawful use of a credit card.  Id. at 206.  While the plaintiff was arrested after voluntarily speaking to the police and making suspicious statements to them, the charges against him were ultimately dismissed.  Id. at 207.  The court found probable cause for the plaintiff's arrest existed as a matter of law, and additional suspicion regarding linkage with the convicted employee.  Id. at 207.  Surely it is not "outrageous" for a retail store to try to protect itself (and other retailers) from theft by turning over evidence to the police.  Their investigation netted at least one conviction and on this basis was not a "witch hunt."  As in Piggot, the conduct was not alleged to be a part of a pattern of deliberate cruelty, and neither case mentioned evidence of notice to the defendants.[4]

Breaking Media's motion to dismiss indicates that the decision in Piggot collected other intentional infliction of emotional distress cases in which the allegedly accusing or false comments were found insufficient.  In fact, cases cited in Piggot that are directly on-point

---

[4]     Breaking Media's characterization of these two cases as being "more egregious" than what Plaintiff has alleged in the Complaint seems to turn on the harm the plaintiffs suffered.  In fact, Plaintiff would gladly choose being falsely arrested for shoplifting over being regularly singled out for harassment on Above the Law.  While Plaintiff has not committed suicide, people can and do commit suicide over less than what the defendants have done to Plaintiff; Plaintiff indicated this to Debevoise in her last email to them shortly after the Apartment Murder comment in November 2011.  In her email to Debevoise on July 5, 2011, Plaintiff mentioned suicidal ideations as a result of her ordeal and malicious gossip.  Publicity such as that which Breaking Media creates to generate advertising revenue has only magnified Plaintiff's emotional distress.

support Plaintiff's cause of action.  The court wrote that ". . . in some instances, a defendant who is in a position of power or authority may be held liable for outrageous conduct related to his or her abuse of said position."  Piggot at 5.  The court cited three cases, including Vasarhelyi v. New School for Social Research, 230 A.D.2d 658, 660 (1996) as "recognizing that where plaintiff claimed that, at the behest of her employer and under threat of severe consequences to her employment, she was subjected to hours of intrusive and threatening interrogation over the course of several days, a 'remedy [was] available . . .' based upon the defendants' 'deliberate and malicious campaign of harassment [and] intimidation,'" Piggot at 5.  The plaintiff in Vasarhelyi was subjected to such campaign of harassment and intimidation in retaliation for her raising, as the New School's chief financial officer, issues concerning the president's expense account procedures.  This is similar to the outrageous harassment and intimidation Plaintiff has experienced at the hands of Debevoise for complaining about employment discrimination.  The court also cited Shannon, where the defendants "intentionally and maliciously engaged in a pattern of harassment, intimidation, humiliation and abuse, causing [the plaintiff] unjustified demotions, suspensions, lost pay and psychological and emotional harm over a period of years" (Id. at 219) and Warner v. Druckier, 266 A.D.2d 2, 3 (1st Dept. 1999), where "defendants, through various specified acts, deliberately, systematically and maliciously harassed him over a period of years so as to injure him in his capacity as a tenant." In addition to abuse of power, these cases show that where the harassment is consistent, repeated and ongoing, a cause of action for intentional infliction of emotional distress is viable.

Plaintiff's allegations against Breaking Media are based on abuse of its media power and discretion by its editors.  Misogyny and singling out unfortunate people for public ridicule,

humiliation, and a permanent internet footprint, have long been central features of Above the Law. Commenters have frequently expressed outrage over the years, to little avail. The repeated targeted harassment specifically directed at Plaintiff involves outrageous incidents over a period of two and a half years, in addition to numerous "insulting" comments directed at Plaintiff over this time period. This is in addition to general misogyny directed at female lawyers. Plaintiff and others complained to Above the Law in the spring of 2010 after an egregious series of threads, and met with belligerence. Additionally, while Breaking Media is not responsible for defendant Debevoise's actions, its collusion with Debevoise, a powerful employer in the small world that is Plaintiff's profession, would provide a reason for the Court to construe Plaintiff's claims against Breaking Media broadly. Above the Law functions as an information resource as well as the social gossip co-ordinator or "e-water cooler" of law firm employers. Plaintiff's employers (as a class) and professional colleagues read it, and those who do so have an information advantage over those who don't. Being targeted in this manner would inevitable have a deleterious effect on Plaintiff's career, self-esteem and well-being.

   D.   <u>Intentional Infliction of Emotional Distress is Properly Pleaded</u>

   Breaking Media's motion to dismiss makes a number of mischaracterization of the posts and comments giving rise to Plaintiff's cause of action against Breaking Media. Below are the proper characterizations of the harassment and targeting of Plaintiff, and other relevant information, giving rise to a cause of action for intentional infliction of emotional distress:

   (1)   "The Blazing Saddles post" on August 13, 2009 consisted of a "thread and related lengthy comment" that Plaintiff has alleged were written by a partner at Debevoise, likely Mary Jo White, and that "were likely made in collusion with Above the Law editors." (See Comp. §§

24 and 30.)  The thread was posted at 12:53 p.m.; the related lengthy comment, a mere 19

minutes later.  On the basis of such a short time frame between the thread and the comment, it

is a reasonable inference that both the thread and the comment were written in advance and

sent to Above the Law for the editors to post.

(2)       The November 19, 2009 installment of a fictional serialized story by "Susanna

Dokupil," identified in the Complaint as "the Dokupil post," contained the "Veronica" character

that is based on Plaintiff and Paul Bird's sexual harassment of Plaintiff at Debevoise.  (See

Comp. §31.)  Under the continuing tort theory for intentional infliction of emotional distress

against Breaking Media, this post is actionable.[5]

(3)       Follow up comments to the Dokupil post (Comp. §31), including on later

installments of the weekly series, were exactly the kind of controversy, outrage and page hits

malicious posts of this nature are designed to generate on Above the Law.  A commenter who

was undoubtedly Paul Bird of Debevoise wrote to the effect that he had never commented on

Above the Law before, but the Dokupil post had "forced his hand," that lawyers have "boring"

jobs and documents to read (something he said to Plaintiff), and don't need to read any more

awful stuff.  Another Debevoise partner wrote his or her own thinly-veiled story about Plaintiff,

prominently "quoting" a cheeky double entendre Plaintiff wrote in an email to a Debevoise

partner on September 4, 2009 to convey her offense at the Blazing Saddles post.  This story

implicitly attacked Debevoise management, and elicited sharp criticism, likely from them.

Commenters noted many implausibilities; for example, the Dokupil series  was ostensibly set in

---

[5]       Inflammatory posts on Above the Law are routinely toned down after the fact.  For example, Plaintiff
remembers the story as originally published saying that Veronica likes to brag about her [sexual] "conquests,"
rather than "exploits."  Suing for defamation or libel would have drawn even more attention to this humiliating
story.  The entire series has been taken down, except for one installment.

(low-rise) Washington D.C., but the office building in the story is a high-rise skyscraper like Debevoise's in Midtown Manhattan.  Another commenter let "outside" readers know that the Dokupil series was an "inside" joke (as to the November 13, 2009 installment, at Plaintiff's expense) by pointing out a list of inside references and similarities to Debevoise.

(4)      Breaking Media's motion to dismiss ignores the Complaint's allegation that a baiting comment on a later thread was made by or on behalf Above the Law editors (Comp. §31) to keep the controversy alive.  The Complaint alleges that while Plaintiff didn't read the Dokupil post when it appeared in November 2009 (nor any of the commentary), she was baited by a cross-reference to the Dokupil post in a thread about Debevoise around December 2009, the last and one of the most stressful months of Plaintiff's job at Proskauer (Comp. §31).  The "cross-reference" in the thread about Debevoise was dialogue or storyline either taken from or invented with respect to the Dokupil series, containing the names of main characters that, when googled (which is what Plaintiff did and what internet users tend to do when encountering unfamiliar names and references), brought up links to the defamatory Dokupil post.  It may be reasonably inferred that Above the Law editors made this trolling cross-reference, because Above the Law started the controversy by publishing the Dokupil series and stood to gain from continuing page hits.  It is a reasonable inference that this baiting cross-reference cleverly placed in the comments to a story about Debevoise was directed wholly or in part at Plaintiff to generate a reaction, and was intended to let even more readers in on the "inside story."  This outrageous baiting activity and "telegraphing" that the Dokupil post was based on Debevoise is actionable under the continuing tort theory.

(5)     Breaking Media's motion to dismiss has mentioned the "several exploitative or undermining comments" aimed at Plaintiff by Debevoise in the summer and fall 2011 (Comp. §32). The Complaint also references a "wave" of vicious, misogynist, black-is-white comments directed at Plaintiff, mostly by another law firm (Comp. §32), indicative of the type of controversy generating page hits, more comments and advertising revenue for Breaking Media.

(6)     Breaking Media's motion to dismiss mentions only one baiting and harassing comment that appeared in October 2011, but the Complaint mentions two (Comp. §32). The first was to a lower-class, NASCAR-driving person wearing a "van dyke beard," and the second was to a star salesman at Brooks Brothers, next to Occupy Wall Street protesters, with the name of building worker in Plaintiff's co-op. Both comments, within a short time of each other, were in prominent "trolling" locations – one of the first comments in a thread. Someone took the bait with respect to the "van dyke" comment, and replied with an aggressive reference to "Van Dyke," making clear that it was a proper name.[6] These parallel comments confirm that they were trolling comments intended to keep the ongoing controversy about Plaintiff's co-op and the partner-vs-associate drama alive, at Plaintiff's continuing expense, just like the cross-reference to the Dokupil post in December 2009 described above in (4). It is a reasonable inference that this trolling was made by or on behalf of Above the Law; this is consistent with their business model. On this basis, these baiting and harassing comments are actionable against Breaking Media under a continuing tort theory regarding emotional distress. Additionally, "bring back Dokupil" (Comp. §32) illustrates why the Dokupil post in November 2009 was so outrageous – it will inevitably follow Plaintiff not only for the rest of her legal

---

[6]     Using a living person's name for advertising purposes, or for the purposes of trade, without having first obtained the written consent of such person is prohibited by N.Y. Civ. Rights Law § 50 – Right of privacy.

career, but in any future dealings or controversies with lawyers. To the extent it too was made by or on behalf of Above the Law editors, it is actionable against Breaking Media under a continuing tort theory regarding emotional distress.

(7)     Justifiably worried that another "Dokupil"-type story could be in the works, Plaintiff expressed concern about Above the Law in her November 4, 2011 emails to defendant Paul Galligan, and was met with the belligerent Apartment Murder comment on a thread dated November 16, 2011.[7] (Comp. §§20, 34 and 35.) The emotional distress Plaintiff suffered is timely and actionable against Breaking Media and the other defendants; it is not clear that the Communications Decency Act applies. See Section III below.

(8)     After a serious event affecting Plaintiff's co-op occurred that illustrated the wrong-headedness of the Apartment Murder comment and other harassing comments directed at Plaintiff, during the first two or three months of 2012, Above the Law once again tried to stir up controversy with several obnoxious threads designed to elicit comments on Plaintiff and her situation. One such thread quite literally tried to "bring back Dokupil." It contained a link to a thread originally published in early 2010, on which Mary Jo White allegedly wrote a comment minimizing what Debevoise had done to Plaintiff (see Comp. §31), and to which Plaintiff replied. Vicious comments directed wholly or in part at Plaintiff were common – for one typical example, "the sociopaths always win, bitch" – until Above the Law abruptly took remedial measures. (See II.B hereof, page 8 and 9.) Many comments over the early months of 2012 threatened to expose Plaintiff's own comments on Above the Law, as if the malicious leaks

---

[7]     In reply to the Apartment Murder comment, someone accused a Sidley partner in Plaintiff's co-op of making this belligerent comment directed at Plaintiff. The comment, referencing a "mortgage-backed securities lawyer," was deleted. To the extent Above the Law was involved in the deletion, this is an example of collusion.

based on emails Plaintiff sent to only a few big law firm partners were justified, or Plaintiff caused Debevoise's Title VII violations. The Complaint alleges that, as Plaintiff was preparing her EEOC Charge of Discrimination around April and May 2012, Above the Law editors noticed a number of page hits on the relevant threads coming from Plaintiff's home computer, and tipped off Debevoise and others. (Comp. §36.) Not long after Plaintiff had searched for and clicked on the Blazing Saddles post, Elie Mystal published a creepy and intrusive thread similar to the Blazing Saddles post (Comp. §36, clause (i)) – an associate making a complaint via letter or email as he left his law firm, and a partner's response, in the same Q&A format. The thread was so pointless and uninteresting, it may be reasonably inferred that it was a baiting response to Plaintiff's page clicks on the Blazing Saddles post, similar to the baiting and harassing activity alleged in (4), (6), and earlier in 2012 as described in this paragraph (8). In a thread on May 16, 2012 about a Cozen partner being sanctioned for vulgar and threatening emails sent to opposing counsel, one commenter jeered at the difficulties in proving that the Cozen partner sent the "stupid emails" originating from his work email account. The Blazing Saddles post discusses a "stupid email." This is not a commonly used phrase on Above the Law, and is an odd way to refer to the Cozen partner's emails. On this basis, it is a reasonable inference that word of Plaintiff's research activity was getting around, and this "stupid emails" comment was an "inside" reference to the difficulties of Plaintiff proving her case. Above the Law's intrusiveness in monitoring activity from Plaintiff's home computer, passing along this information to others who made "inside" comments, and publishing a baiting and harassing thread alluding to such activity, is outrageous and part of a continuing tort of intentional infliction of emotional distress.

19

(9)     The Complaint alleges that three intimidating comments were directed at Plaintiff around April and May 2012 based on tips from Above the Law editors regarding Plaintiff's research on Above the Law.  One was allegedly made by the Dewey partner, along the lines of "Now everyone will want to sue law firms.  It's too late and you'll be hurt too, so get over yourself." (See Comp. §36, clause (ii)).  This comment was deleted.[8]  The Dewey partner had previously threatened Plaintiff with sexual gossip.  (See Comp. §§ 6 and 22).  Two comments were made by or on behalf of Debevoise threatening or alluding to career damage if Plaintiff pursued her remedies under the law (see Comp. §36, clause (iii)).  This is another example of collusion between Debevoise, the Dewey partner who has acted as their agent, and Breaking Media, and is part of a pattern of tortious conduct attributable to Breaking Media.  It is not clear that the Communications Decency Act applies; see Section III below.

An action for intentional infliction of emotional distress against Breaking Media is properly pleaded in the Complaint.

## III.     The Communications Decency Act Does Not Apply to Plaintiff's Claims

It is not clear that the Communications Decency Act of 1996, 47 U.S.C. § 230, et seq or "CDA" applies to the Apartment Murder comment made by defendant Doe 6, posting as "Bonobo Bro" on November 16, 2011 (see Section II.D(7) hereof).  On a motion to dismiss, it is not possible to determine if defendant Doe 6 is "another" (third-party) information content provider for purposes of the CDA.  As stated in the Complaint, "Bonobo Bro" was shown as having made 8,494 comments, and had in effect taken over Above the Law (Comp. §13).  On

---

[8]     At least one other reader (in all likelihood, many "insiders") also apparently believed that this comment came from the Dewey partner.  Shortly after it appeared, someone exposed and disparaged him.

this basis, it is plausible that "Bonobo Bro" is in fact affiliated with Breaking Media or Above the Law, or posting comments to increase traffic for the benefit of Breaking Media or Above the Law, based on his posting such an inordinate amount of comments.  Additionally, to Plaintiff's knowledge, Bonobo Bro does not publish his own tips line, but Above the Law does, as well as contact information of its staff.  Above the Law editors circulate within the legal community, and sometimes announce upcoming events they will attend.  It is entirely plausible that the "tip" regarding malicious gossip came through Above the Law, and accordingly Breaking Media would have tort liability on that basis.

Similarly, it is not clear that the CDA applies to jeering and intimidating comments directed at Plaintiff in April and May 2012 based on tips from Above the Law editors.  (see Section II.D(9) hereof).  Based on the alleged tips and Above the Law's business model of generating controversy, it may be argued that Above the Law is an "information content provider" as to those comments.  An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet."  See 47 U.S.C. §230(f)(3).  In such case, Breaking Media would not have CDA protection, that is premised on information posted by "another" (third party) information content provider.  Regardless of whether CDA protection for "publisher liability" applies to the content of intimidating comments aimed at Plaintiff,  Breaking Media remains liable for the alleged tip itself, under a continuing tort theory of intentional infliction of emotional distress.  Similar arguments would apply to the Apartment Murder comment, to the extent of Breaking Media's involvement, and any other purportedly "third party" comments where Above the Law

editors or other affiliates with respect to which Above the Law may have been responsible for creation and development.  This is an issue for discovery and trial.

The two New York cases cited in Breaking Media's motion to dismiss involve conduct clearly protected by the CDA – a search engine that allegedly didn't properly remove a misleading link about a political candidate (see <u>Murawski v. Pataki</u>, 514 F.Supp.2d 577 (S.D.N.Y. 2007) and an on-line classified ad service, where someone allegedly bought a gun used to shoot the plaintiff (see <u>Gibson v. Craigslist, Inc.</u>, 2009 WL 1704355 (S.D.N.Y. June 15, 2009).  Breaking Media's motion to dismiss has cited a case confirming that an on-line dating service remains entitled to the protections of the CDA regarding a false profile created by a third-party, even though the dating service merely circulated a questionnaire on which such third-party content was made.  See <u>Carafano v. Metrosplash.com, Inc.</u>, 339 F.3d 1119 (9th Cir. 2003).  In fact, in a case that is more similar to Plaintiff's allegations against Breaking Media, involving an on-line dating service accused of fraud and negligent misrepresentation, the court confirmed that the CDA doesn't shield "interactive computer service providers" from their own torts.  See <u>Anthony v. Yahoo! Inc.</u>, 421 F.Supp.2d 1257 (N.D. California, March 17, 2006).  In that case, Yahoo allegedly created false profiles and sent users false profiles for the purpose of luring them into renewing subscriptions.  (<u>Id</u>. at 1259.)  Also, Yahoo allegedly sent legitimate profiles of former subscribers whose subscriptions had expired to current subscribers.  (<u>Id</u>. at 1260.)  The court found that such potentially tortious activities were not protected by the CDA.  (<u>Id</u>. at 1262.) Plaintiff similarly alleges tortious conduct against Breaking Media, for the purpose of increasing website traffic and thereby, revenue from their advertisers, that is not protected by the CDA.

In view of the foregoing, it is respectfully submitted that Breaking Media's motion to dismiss should be denied.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated:   February 4, 2013
         New York City, New York

By:   _____
      Sara J. Van Dyke

      Sara J. Van Dyke, pro se
      20 East 35th Street, Apt. 14L
      New York, New York  10016
      (212) 725-2706 *phone and fax*
      sjvdnyc@hotmail.com *email*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SARA J. VAN DYKE, | Magistrate Judge Ellis. |
| Plaintiff, | Civil Action No. 12 CV 8354 |
| -against- | **AFFIRMATION OF SERVICE** |
| Partners of DEBEVOISE & PLIMPTON LLP, BREAKING MEDIA, INC., PAUL GALLIGAN, and DOES 1 - 6, | |
| Defendants | |

I, Sara J. Van Dyke, declare under penalty of perjury that I have served a copy of the attached Affirmation in Opposition to Defendant Breaking Media, Inc.'s Motion to Dismiss upon Jeffrey Craig Miller of Miller Korzenik Sommers LLP, attorney for defendant Breaking Media, Inc., whose address 488 Madison Avenue, Suite 1120, New York, New York, 10022, via first class mail.

Dated:  February 4, 2013
New York City, New York

By: _Sara J Van Dyke_
Sara J. Van Dyke

Sara J. Van Dyke, pro se
20 East 35th Street, Apt. 14L
New York, New York  10016
(212) 725-2706 *phone, fax*
sjvdnyc@hotmail.com *email*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SARA J. VAN DYKE, <br><br> Plaintiff, <br><br>      -against- <br><br> Partners of DEBEVOISE & PLIMPTON LLP, BREAKING MEDIA, INC., PAUL GALLIGAN, and DOES 1 - 6, <br><br> Defendants | Magistrate Judge Ellis <br><br> Civil Action No. 12 CV 8354 <br><br> **AFFIRMATION OF SERVICE** |

I, Sara J. Van Dyke, declare under penalty of perjury that I have served a copy of the

attached Affirmation in Opposition to Defendant Breaking Media, Inc.'s Motion to Dismiss upon

Eddy Salcedo and Melissa Starcic of Seyfarth Shaw LLP, attorneys for defendant Paul Galligan,

whose address is 620 Eighth Avenue, New York, New York, 10018, via first class mail.

Dated:  February 4, 2013
       New York City, New York

By: _Sara J Van Dyke_

Sara J. Van Dyke

Sara J. Van Dyke, pro se
20 East 35th Street, Apt. 14L
New York, New York  10016
(212) 725-2706 *phone, fax*
sjvdnyc@hotmail.com *email*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SARA J. VAN DYKE,<br><br>Plaintiff,<br><br>            -against-<br><br>Partners of DEBEVOISE & PLIMPTON LLP, BREAKING MEDIA, INC., PAUL GALLIGAN, and DOES 1 - 6,<br><br>Defendants | Magistrate Judge Ellis<br><br>Civil Action No. 12 CV 8354<br><br>**AFFIRMATION OF SERVICE** |

I, Sara J. Van Dyke, declare under penalty of perjury that I have served a copy of the

attached Affirmation in Opposition to Defendant Breaking Media, Inc.'s Motion to Dismiss upon

Edwin G. Schallert and Vanessa De Simone of Debevoise & Plimpton LLP, whose address is 919

Third Avenue, New York, New York, 10022, via first class mail.

Dated:  February 4, 2013
       New York City, New York

By: _Sara J. Van Dyke_
      Sara J. Van Dyke

      Sara J. Van Dyke, pro se
      20 East 35th Street, Apt. 14L
      New York, New York  10016
      (212) 725-2706 *phone, fax*
      sjvdnyc@hotmail.com *email*