USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/19/13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SARA J. VAN DYKE,

                          **Plaintiff,**

           - against -

PARTNERS OF DEBEVOISE & PLIMPTON
LLP, BREAKING MEDIA, INC., PAUL GALLIGAN,
AND DOES 1-6,

                       **Defendants.**

**REPORT AND**
**RECOMMENDATION**

**12 Civ. 8354 (GBD) (RLE)**

**To the HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

## I.   INTRODUCTION

*Pro se* Plaintiff Sara Van Dyke brings this action for employment discrimination and retaliation against Defendants Debevoise & Plimpton, LLP ("Debevoise"),[1] Breaking Media, Inc. ("Breaking Media"), Paul Galligan ("Galligan"), and Does 1-6,[2] pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and related state laws.  Van Dyke also alleges that she suffered intentional and negligent infliction of emotion distress by all Defendants.  Debevoise and Galligan separately move to dismiss the Complaint pursuant to Rule 12(b)(6) and Defendant Breaking Media moves to dismiss the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

---

[1] The caption of the Complaint lists "Partners of Debevoise" among the Defendants.  Van Dyke also names within the Complaint partners Paul Bird, Gary Kubek, Martin Frederic Evans, David Bernstein, William Beekman, Larry Cagney, Greg Gooding, Mary Jo White, Mark Goodman, Michael Harrell, and Wolcott Dunham. (Compl. ¶¶ 17,29.)  In paragraph ten, she indicates that the firm, not the named partners, is the Defendant for purposes of jurisdiction.  (*See* Compl. ¶ 10.)  Therefore, the Court construes this Complaint to be against Debevoise, and not the individually named partners.

[2] Van Dyke alleges that Does 1-5 are lawyers in the New York Debevoise office and that Doe 6 is a commentator on Above The Law, contributing as "Bonobo Bro."  (Compl. ¶ 13.)

For the reasons that follow, I recommend that the motions of Debevoise, Galligan, and Breaking Media be **GRANTED**.

## II.   BACKGROUND

Van Dyke is a 1999 graduate of Yale Law School and was employed as an associate in Debevoise's executive compensation and employee benefits department from February 2001 through February 2005.  (Compl. ¶¶ 1, 2.)  Van Dyke alleges that she was singled out by partners at Debevoise by "vicious bullying, humiliation," and "malicious gossip."  (*Id.* at ¶ 2.)  Van Dyke argues that the discriminatory behavior included: (1) sexual harassment by Paul Bird ("Bird"), a Debevoise partner and graduate of Yale Law School; (2) sex discrimination by Lawrence Cagney ("Cagney"), the head of her department at Debevoise; (3) a hostile working environment "sponsored" by Elizabeth Pagel ("Pagel"), her mentor at Debevoise; and (4) a "withering attack" from Martin Frederic Evans ("Evans"), a Debevoise partner, in retaliation for Van Dyke's Title VII complaints.  (*Id.*)  Van Dyke left Debevoise in February 2005 for an unnamed "mid-sized" firm, then began working for Proskauer Rose LLP ("Proskauer") in the summer of 2006. (Compl. ¶¶ 2, 19.)

Van Dyke does not indicate any dates for the alleged discriminatory actions, only that they took place while she was at Debevoise, that is, prior to March 2005.  Van Dyke also alleges retaliation from Debevoise "for its failure and refusal to properly address its Title VII issues" by allegedly making comments directed at her on various online articles, which include (a) a reference by an anonymous comment contributor to a "van dyke beard," (b) an anonymous comment to an article about a law student's death and that an unnamed person should "get over it," (c) "intimidating comments by or on behalf of Debevoise partners in connection with

2

Plaintiff's second EEOC charge." (Van Dyke Opp'n to Deb. at 9.) These events allegedly took place in 2011.

Van Dyke alleges that in 2004, Pagel "kicked off" a "witch hunt" which included "obnoxious statements, cruelty, and bad faith" from Burt Rosen, the head of the tax department at Debevoise. (Compl. at ¶¶ 4, 26.) She alleges that male partners at Debevoise, including Bird, Gary Kubek, and Cagney, denigrated her for her previous work experience at an investment bank. (*Id.* at ¶ 18.) She alleges that after she left Debevoise, the firm came after her with an "orchestrated campaign of social aggression" and a "witch hunt." (Compl. ¶ 3.) Certain unnamed partners at Debevoise who graduated from Yale Law School, spread malicious gossip about her to an unnamed partner at the "mid-sized" firm. (*Id.* at ¶ 5.) The gossip resulted in negative interactions with the unnamed partner at this "mid-sized" firm, forcing her to leave. (*Id.*) When she moved to Proskauer, Cagney "passed along a highly misogynist investment banking pretext [sic]" to her new boss, Michael Sirkin. (*Id.* ¶ 19.)

Van Dyke alleges that a worker in her cooperative apartment ("co-op") treated her poorly because of "malicious sexual gossip" that was spread by a partner at the then-Dewey Ballantine, LLP. (Compl. ¶ 6.) She sent emails to Galligan, the attorney for her co-op, complaining about the co-op worker. (Compl. ¶ 32.) Van Dyke claims that Galligan forwarded those emails to Debevoise partners and other individuals. (*Id.*) She claims that information included in her emails to Galligan surfaced on the legal blog Above the Law ("ATL") and that this caused her emotional distress. (*Id.*)

Further, Van Dyke alleges that Debevoise intimidated and harassed her in various media outlets. (*Id.* at ¶ 7.) Those media outlets referenced her "by way of context, details, fact patterns, and/or language in emails" that she had sent to a limited number of people. Van Dyke

3

claims that it would be clear to someone reading one of the articles that she was being personally "demeaned and abused." (*Id.*) The behavior Van Dyke alleges includes: (1) "potshots"[3] at her in a September 2005 issue of American Lawyer magazine from Mary Jo White ("White"), the chair of the litigation department at Debevoise, and Michael Gillespie[4]; (2) a March 2007 Debevoise video campaign directed at her; and (3) an ATL thread titled "Blazing Saddles," directed at her from a Debevoise partner, "likely Mary Jo White," and published by Breaking Media. (*Id.*) Van Dyke also alleges that this behavior continued in other unnamed ATL threads, including one by Doe 6 and allegedly threatening comments believed to come from Debevoise as she filed her second charge of discrimination with the EEOC. (*Id.*)

In addition to the threads, Van Dyke believes that three articles on ATL were related to her, including (1) an article authored by "Blazing Saddles"[5] in August 2009; (2) an article authored by Suzanna Dokupil[6] ("Dokupil") in November 2009; and (3) a comment on an article which Van Dyke refers to as "Apartment Murder"[7] on November 16, 2011.

---

[3] Van Dyke does not define or indicate the meaning of "potshots."

[4] Van Dyke does otherwise identify this individual.

[5] With regard to the "Blazing Saddles" article, Van Dyke alleges that this article was directed at her in retaliation for her EEOC filings and made in collusion with ATL editors. (Compl. ¶ 30.) The Blazing Saddles article is about an attorney seeking advice on departure emails as he or she leaves his or her "biglaw" job. ( Van Dyke Opp'n. to Galligan's Mot. to Dismiss ("Van Dyke Opp'n to Galligan") Ex. 2.)

[6] The Dokupil article is a fictional mystery story, set in a Washington D.C. boutique appellate firm, about an associate named "Veronica" who is suing the firm for sexual harassment. (Van Dyke Opp'n to Galligan, Ex. 3.) Van Dyke alleges that this "Veronica" character is based on her. (*Id.*) Similarly, Van Dyke alleges that the 2011 New York City Bar's Twelfth Night musical would have initially contained a "'Veronica-type character (like in the Dokupil article) intended to ridicule her and other similarly situated younger female lawyers." (Compl. ¶ 33.)

[7] Van Dyke did not provide the "Apartment Murder" comment as an exhibit. She does, however, allege that the thread, about the murder of a female law student, contained "several similarities to [her] situation." (Compl. ¶ 34.)

4

### III.   DISCUSSION

A.   **Motion to Dismiss Standard**

1.   **Subject Matter Jurisdiction**

In considering a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1) of the Federal Rules of Civil Procedure, a court must assume as true factual allegations

of the non-moving party. *Shipping Financial Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.

1998) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)); *Serrano v. 900 5th Ave. Corp.*, 4 F.

Supp. 2d 315, 316 (S.D.N.Y. 1998). Rule 12(b)(1) provides for the dismissal of a claim when

the federal court "lacks jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "In most

cases, the court will consider a 12(b)(1) motion before ruling on any other motions to dismiss,

since dismissal of an action for lack of subject matter jurisdiction will render all other

accompanying defenses and motions moot." *Yilmaz v. McElroy*, No. 00 Civ. 7542 (RCC), 2001

WL 1606886 (S.D.N.Y. Dec. 17, 2001); *see United States ex rel Kreindler & Kreindler v. United

Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993). Accordingly, a court confronted with a

motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional

question first because "a disposition of a Rule 12(b)(6) motion is a decision on the merits, and

therefore, an exercise of jurisdiction." *Magee v. Nassau County Medical Center*, 27 F. Supp. 2d

154, 158 (E.D.N.Y. 1998).

2.   **Failure to State a Claim**

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must accept all factual allegations in the complaint as true and draw all

reasonable inferences in favor of the plaintiff. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104,

110-11 (2d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain detailed factual allegations, but must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Further, Courts have dismissed complaints under Rule 12(b)(6) where it is clear that the plaintiff's claims are untimely. *See, e.g., Staehr v. Hartford Fin. Serv. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises ... [a statutory bar] as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."); *Adams-Shango v. New York City Dep't of Educ.*, No. 11 Civ. 4619 (RJS), 2012 WL 3834668 *3 (S.D.N.Y. Aug. 22, 2012) (dismissing a *pro se* Title VII complaint as time-barred pursuant to Rule 12(b)(6)); *Akhtab v. BCBG Max Azaria Group Inc.*, No. 11 Civ. 4567 (SAS), 2011 WL 4888799 *1 (S.D.N.Y. Oct. 13, 2011).

The complaint of a *pro se* plaintiff should be construed liberally, applying a less stringent standard of sufficiency than when evaluating a complaint prepared by counsel. *See Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002); *accord Lerman v. Bd. Of Elections*, 232 F.3d 135, 139-40 (2d Cir. 2000)).

**B.     Van Dyke's Claims Against Breaking Media Lack Subject Matter Jurisdiction**

Van Dyke's claims of emotional distress against Breaking Media arise under state, not federal, law. Therefore, the Court cannot exercise subject matter jurisdiction. *See* 28 U.S.C. § 1331; *Metro Life Ins. Co.*, 481 U.S. 58, 63 (1987) ("Federal question jurisdiction exists "only

when a plaintiff's well-pleaded complaint raises issues of federal law."). Further, there is no diversity jurisdiction between Van Dyke and Breaking because Van Dyke is a New York citizen and Breaking Media's principal place of business is in New York. *See* 28 U.S.C. § 1332; Compl. ¶¶ 9, 11. Accordingly, Van Dyke's claims against Breaking Media lack subject matter jurisdiction. *See Phoenix*, 446 F. Supp. 2d 205, 217 (S.D.N.Y. 2006).

I recommend that Breaking Media's motion to dismiss this claim be **GRANTED**.

## C.     Van Dyke's Claims Against Paul Galligan Lack Subject Matter Jurisdiction

A court has subject matter jurisdiction when a claim involves a federal question or through diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332. Van Dyke alleges that Galligan caused her emotional distress, a claim grounded in state law. Her claim does not involve a federal question. *See* 28 U.S.C. § 1331; *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

In her Complaint, Van Dyke alleges that Galligan "is an attorney licensed in New York, and is a partner in the New York office of Seyfarth Shaw, LLP." (Compl. ¶ 12.) Since there is no federal question for the Court to address with respect to Galligan, subject matter jurisdiction must be conferred through diversity, 28 U.S.C. § 1332. Diversity jurisdiction is conferred when the opposing parties are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Van Dyke alleges that she is a resident of New York State. (Compl ¶ 9.) Even though Galligan has not raised the issue, (*see generally* Galligan's Mem. of Law in Supp. of Mot. to Dismiss), a court "may examine subject matter jurisdiction, *sua sponte*, at any stage of the proceeding." *Cornwell v. Credit Suisse Group*, 666 F. Supp. 2d 381, 386 (S.D.N.Y. 2009). Based on her allegations, it is unclear whether Galligan is a resident of New York or a nearby state. Van Dyke therefore has not demonstrated diversity of citizenship within her Complaint.

Even if diversity of citizenship did exist, however, the amount in controversy requirement does not appear to be satisfied. Van Dyke's request for relief is mostly concentrated on her claims against Debevoise. (*See* Compl. at 22.) She requests (1) "compensation for lost wages, benefits, and other remuneration from defendant Debevoise in an amount to be proven at trial"; (2) "compensation for injury resulting from loss of current and prospective income, loss of career opportunities and loss of reputation from Defendant Debevoise in an amount proven at trial"; (3) "punitive damages in the amount of $2.1 million from defendant Debevoise for their malicious, wanton, and reckless conduct, and to deter them and others from further such conduct." (*Id.*) Besides her request for attorney's fees and costs, she requests "compensation for emotional distress and injury resulting from emotional distress from all defendants in an amount to be proven at trial." (*Id.* 22, 23.) Her request for damages based on emotional distress is the only request that includes Galligan.[8] Even considering Van Dyke's *pro se* status, her request for relief against Galligan fails to meet the standard set forth in *Iqbal* and *Twombly* because a plaintiff's assertions must be plausible, not merely possible. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

It is not plausible that Van Dyke could have suffered over $75,000 in emotional damages from the actions attributable to Galligan. Van Dyke's claims against Galligan stem from her belief that he forwarded emails to individuals at Debeviouse, which were then leaked to ATL.

---

[8] The Court is not considering Van Dyke's request for damages against Debeviose in conjunction with her request against Galligan. This approach does not run afoul to the Supreme Court's decision in *Exxon Mobil Corp. v. Allapatah Services, Inc.*, 545 U.S. 546, 559 (2005), where the Court held that when original jurisdiction exists over at least one claim, each defendant is not required to satisfy the amount in controversy requirement set forth in 28 U.S.C. § 1332. Here, as discussed *infra*, the Court recommends that her claims against Debeviose be dismissed, and that jurisdiction not be exercised as it relates to her state law claims. Thus, a claim where the Court has original jurisdiction does not exist, and Van Dyke's claims against Galligan must independently satisfy all the requirements for subject matter jurisdiction.

She alleges that this caused her emotional distress, but does not include specifics as to the nature of her injury. She also does not allege facts that would allow the Court to reasonably infer the nature of her emotional damages, as the conduct attributed to Galligan does not appear to rise to the high standards for proving intentional and negligent infliction of emotional distress. *See Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983); *Ornstein v. New York City Health and Hosp. Corp.*, 10 N.Y.3d 1, 6 (2008). Considering the conclusory nature of her request for relief, and her failure to plead facts that support an award of damages in excess of $75,000 as it relates to her emotional damage, the Court finds that she has not sufficiently pled the amount in controversy required by 28 U.S.C. § 1332 as it relates to Galligan. Thus, Van Dyke does not have subject matter jurisdiction for her claims against Galligan.

I recommend that Galligan's motion to dismiss this claim be **GRANTED**.

**D.    Van Dyke's Claims Against Debevoise**

**1.    Timeliness of Van Dyke's Title VII Claims Against Debevoise**

Van Dyke alleges that her rights under Title VII were violated through (1) sexual harassment by Bird, a Debevoise partner; (2) sex discrimination by Cagney, another Debevoise partner; (3) the creation of a hostile work environment "sponsored" by Pagel, her mentor at Debevoise; (4) a "withering attack" from Evans, a Debevoise partner, in retaliation for Van Dyke's Title VII complaints, (*see* Compl. ¶ 2); and (5) retaliation from Debevoise "for its failure and refusal to properly address its Title VII issues" by allegedly making comments directed at her on various online articles, which include (a) a reference by an anonymous comment contributor to a "van dyke beard," (b) an anonymous comment to an article about a law student's death and that an unnamed person should "get over it," (c) "intimidating comments by or on behalf of Debevoise partners in connection with Plaintiff's second EEOC charge." (Van Dyke

Opp'n to Debevoise's Mot. to Dismiss ("Van Dyke Opp'n to Deb.") at 9.)  With respect to the

first four allegations, Van Dyke does not indicate when the events took place.  She does,

however, state that they took place while she was an associate at Debevoise.  These events thus

incurred no later than February 2005.  The remaining allegations that relate to comments posted

on online articles occurred in 2011.  (*Id.*)

      Pursuant to 42 U.S.C. § 2000e-5(f)(l), an individual who files an administrative charge

with the EEOC and receives a right-to-sue letter must file suit within 90 days of the issuance of

the right-to-sue letter.  Van Dyke filed her first administrative charge that included her sexual

harassment, sex discrimination, hostile work environment, and one of her retaliation claims (her

pre-February 2005 claims) against Debevoise in December 2006.  She received a right-to-sue

letter on February 9, 2007.  (Van Dyke Letter to Court dated February 9, 2007, Ex. A.)  Thus,

Van Dyke had until May 10, 2007, to bring this lawsuit against Debevoise.  *See* 42 U.S.C. §

2000e-5(f)(l).  She filed this action on November 15, 2012, five years and five months after the

statute of limitations had run.  (*See* Docket No. 1.)

      On May 14, 2012, Van Dyke filed a second administrative charge alleging discrimination

and retaliation against Debevoise, which allegedly occurred after 2005.  (Compl. ¶ 7.)  The

EEOC dismissed this charge on September 14, 2012, stating that the "charge was not timely filed

with the EEOC; in other words, you waited too long after the dates(s) of the alleged

discrimination to file your charge." (Compl., Ex. 1)  Pursuant to 42 U.S.C. § 2000e-5(e)(1), an

individual must file an EEOC charge within 300 days of the alleged violation before she can

bring a claim in federal court – an essential requirement "analogous to a statute of limitation."

*Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).  Here, Van Dyke did

not file her second charge until May 14, 2012, which means that only alleged conduct within 300

days of that date – after July 19, 2011 – is potentially actionable. *See Id.* Van Dyke concedes that many of her Title VII claims are time-barred. (*See* Van Dyke Opp'n to Deb. at 4.) ("Much of Debevoise's motion to dismiss is devoted to arguments that potential causes of action described in Plaintiff's Complaint are time-barred, as of course many of them are.")

Van Dyke's Title VII claims against Debevoise with respect to the (1) alleged sexual harassment by Bird, (2) alleged sex discrimination by Cagney, (3) the alleged creation of a hostile work environment by Pagel, and (4) the alleged "withering attack" from Evans all occurred prior to February 2005. These claims were presumably included in her December 2006 administrative charge with the EEOC, requiring her to bring this lawsuit by May 2007. Any suit including those claims was required to be filed within 90 days of her receipt of a right-to-sue letter. They are untimely in the present action, and I recommend that Debevoise's motion to dismiss these claims be **GRANTED**.

   a.  **Van Dyke Fails to Establish a *Prima Facie* Case of Retaliation Against Debevoise**

Van Dyke claims that Debevoise retaliated against her because of her charges filed with the EEOC by attacking her through the comments section on ATL. She claims that in October 2011 someone linked to Debevoise posted comments on an ATL article referencing a "van dyke beard." (Compl. ¶ 32; Van Dyke Aff. Opp'n Deb. at 9.) Van Dyke further claims that comments posted on a November 2011 ATL article that dealt with the murder of a law student were related to her. She claims that Doe 6 wrote the comments "obviously [in] response to Plaintiff's emails" to Galligan that she needed to "just get over it." (Compl. ¶ 34; Van Dyke Aff. Opp'n Deb. at 9.) She believes that the comment was related to her and that it originated from partners at Debevoise. (Compl. ¶ 34.) Lastly, Van Dyke claims she suffered "intimidating

11

comments by or on behalf of Debevoise partners in connection with Plaintiff's second EEOC charge." (Van Dyke Aff. Opp'n Deb. at 9; *see* Compl. ¶ 36.)

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Retaliation claims brought under Title VII are analyzed under the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). Van Dyke must establish a *prima facie* case of retaliation by showing: (1) she participated in a protected activity; (2) Debevoise knew of the protected activity; (3) Debevoise took an adverse employment action against her; and (4) a causal connection between the protected activity and the adverse employment action. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).

Van Dyke argues that Debevoise retaliated against her because of its "failure and refusal to properly address its Title VII issue." (Van Dyke Aff. Opp'n Deb. at 9.) It is unclear whether she is alleging that Debevoise retaliated against her because of her complaints with the EEOC. Nonetheless, assuming the first two elements are met, Van Dyke has not established a *prima facie* case against Debevoise because she fails to show that Debevoise took a materially adverse employment action against her. An action is considered "materially adverse" if it "dissuade[s] a reasonable working from making or supporting a charge of discrimination." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 698 (2d Cir. 2012) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Employment actions that have been deemed sufficiently disadvantageous to constitute an adverse employment action include 'termination of

12

employment, a demotion evidenced by a decreased in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004). Actions that are considered "trivial harms" – petty slights or minor annoyances – are not materially adverse. *See Rivera*, 702 F.3d at 698.

Van Dyke does not allege any facts to show that she suffered from a "materially adverse" employment action from Debevoise because of her EEOC discrimination charges. She argues that she suffered retaliatory and harassing comments, and malicious gossip from individuals connected to Debevoise. (Van Dyke's Opp'n at 8-11.)  In her opposition, Van Dyke argues that Debevoise "leaked" sensitive information by placing comments relating to emails she sent to Debevoise on the comments section of different ATL articles. (*Id.* at 9.) She believes that these "leaks" were in response to her complaints against Debeviose. (*Id.*)  Making inferences most favorable to Van Dyke, and based on the allegations within the Complaint and her Opposition to the instant motions, the Court cannot conclude that unknown individuals with knowledge of her EEOC complaints against Debevoise made comments on seemly unrelated articles on ATL in retaliation to her EEOC charges.   Although colorable retaliation claims under Title VII extend beyond "workplace-related or employment-related retaliatory acts and harm," *Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 673 (S.D.N.Y. 2011), Van Dyke's allegations do not establish a "materially adverse" employment action because they do not reasonably dissuade an employee from supporting a discrimination charge.

Even if Van Dyke could show a materially adverse action, she fails to establish a causal connection between her purported protected activities and that adverse action.  A plaintiff can establish a causal connection by "(1) showing that the protected activity was followed closely by

discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). When considering a causal connection, "courts have uniformly held that the longer the interval between the protected activity and the adverse employment action, the more attenuated the evidence of the requisite causation." *Spadola v. New York City Transit Authority*, 242 F. Supp. 2d 484 (S.D.N.Y. 2003) (citing *Clark Cnty School Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). The temporal proximity between the alleged protected activity and adverse employment action must be "very close." *Breeden*, 532 U.S. at 273. In *Breeden*, the Court held that an adverse action that had taken place twenty months after the protected activity "suggests, by itself, no causality at all." *Id.* at 274.

Here, Van Dyke alleges that events which had taken place in 2011 and 2012 were related to her employment with Debevoise which ended in 2005. Over five years had passed between her employment and the allegedly unlawful actions on the part of Debevoise. The temporal proximity is too remote to carry her burden of establishing a *prima facie* case of retaliation against Debevoise. *See Berkley v. Penn Yan School Dist.*, 442 F. App'x 581, 584 (2d Cir. Sept. 2, 2011) (eleven month gap too long to sustain retaliation claim); *Diello v. Potter*, 413 F. App'x 344, 346 (2d Cir. Mar. 9, 2011) (seven year "lag" between EEOC complaint and promotion decision insufficient to sustain retaliation claim). Therefore, Van Dyke fails to carry her burden with respect to her Title VII retaliation claims against Debevoise for comments allegedly made on ATL articles.

I recommend that Debevoise's motion to dismiss Van Dyke's Title VII claims occurring after 2005 be **GRANTED**.

### 2.      Van Dyke's State Law Claims Lack Subject Matter Jurisdiction

Federal courts may exercise supplemental jurisdiction when the state and federal claims are part of "a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Federal courts also are permitted to retain pendent jurisdiction of remaining state claims if the federal claims are dismissed on the merits and prior to trial. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). When retaining jurisdiction over a state claim, a court must consider "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction." *Id.* Federal courts normally decline to exercise jurisdiction when all the federal claims have been dismissed before trial. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). In addition to her Title VII claims, Van Dyke brought claims against Debevoise under the New York State Human Rights Law, New York City Human Rights Law, and for intentional and negligent infliction of emotional distress. (Compl. at 1.) Her remaining claims are grounded in state law. The Court declines to exercise supplemental jurisdiction over these claims. *See* 28 U.S.C § 1967(c)(3); *Jetter v. Knothe Corp.*, 200 F. Supp. 2d 254, 268 (S.D.N.Y. 2002).

I recommend that Debevoise's motion to dismiss Van Dyke's state law claims be **GRANTED**.

15

## IV.   CONCLUSION

For the foregoing reasons, I recommend that the motions of Debevoise, Galligan, and Breaking Media be **GRANTED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court and served on all adversaries with extra copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 1310, and to the chambers of the undersigned, 500 Pearl Street, Room 1970.  Failure to file timely objections shall constitute a waiver of those objections in both the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 US. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

This Opinion addresses Docket Entry Numbers 5, 16, and 22.


**SO ORDERED this 19th day of August 2013**
**New York, New York**

The Honorable Ronald L. Ellis
United States Magistrate Judge

16

Copies of this Order were sent to:

*Pro Se* Plaintiff
Sara J. Van Dyke
20 East 35th Street, Apt. 14L
New York, NY 10016

Counsel for Defendant Debevoise &Plimpton LLP
Edwin G. Schallert
Vanessa De Simone
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Counsel for Defendant Breaking Media
Jeffrey Craig Miller
Miller Korzenik Sommers LLP
488 Madison Avenue, Suite 1120
New York, NY 10022

Counsel for Defendant Paul Galligan
Eddy Salcedo
Melissa Starcic
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018